## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

PACK Private Capital, LLC,                          Civil No. 24-935 (DWF/ECW)

               Plaintiff,

v.

                                            **MEMORANDUM**

Associated Bank, N.A., James B. Fink,       **OPINION AND ORDER**
Rodney Murray, Michael Waltz,

              Defendants.

## INTRODUCTION

This matter is before the Court on Plaintiff PACK Private Capital, LLC's

("PACK") motion to remand this action to state court (Doc. No. 23), Defendants

Associated Bank, N.A. ("Associated"), Rodney Murray, and Michael Waltz's motion to

dismiss (Doc. No. 39), and Defendant James B. Fink's motion to dismiss (Doc. No. 50).

Defendants Associated, Murray, and Waltz oppose Plaintiff's motion to remand.  (Doc.

No. 47.)  Plaintiff opposes Defendants' motions to dismiss.  (Doc. Nos. 58, 67.)  For the

reasons set forth below, the Court denies the motion to remand, denies Fink's motion to

dismiss as moot, and grants Associated's motion to dismiss.

## BACKGROUND

PACK is a Delaware limited liability company based in Wayzata, Minnesota that

was formed in 2020 to invest in and support private businesses in the Midwest.  (Doc.

No. 1, Ex. A ("Fed. Compl.") ¶¶ 1, 5.)[1]  In September 2021, PACK began providing loans to Silver Fox Energy, LLC ("Silver Fox"), a North Dakota-based energy industry construction company.  (*Id.* ¶¶ 7, 11.)  Later, PACK learned that Silver Fox had ongoing cash flow issues and required additional funding.  (*Id.* ¶ 12.)  PACK offered Silver Fox additional short-term loans to allow Silver Fox's operations to continue, often called "payroll float loans" between the two parties.  (*Id.* ¶ 13.)  The understanding between PACK and Silver Fox was that Silver Fox would repay PACK on the payroll float loans as soon as its accounts receivable became available.  (*Id.* ¶ 14.)  Often there was no formal documentation or interest on these loans.  (*Id.*)

Despite the additional funding provided by PACK, Silver Fox continued to struggle, requiring larger and more permanent funding.  (*Id.* ¶¶ 12, 15.)  PACK began discussions with Associated on loan deals for its various affiliated businesses, including Silver Fox.  (*Id.* ¶ 16.)  Subsequently, Associated began discussions directly with Silver Fox about a potential banking and lending relationship.  (*Id.* ¶ 17.)  Ultimately, Associated agreed to provide a revolving line of credit of $2 million and a term loan of $1 million to Silver Fox in October 2021.  (*Id.* ¶ 18.)  At the time of the agreement, Associated was aware that some of the loan money would be immediately used to pay PACK for payroll float loans and pay off debt with other lenders.  (*Id.* ¶ 20.)

---

[1]    The Court strikes PACK's first amended complaint below.  Consequently, the Court relies on the allegations in PACK's original complaint.

The loan agreement between Silver Fox and Associated required PACK to execute a subordination agreement wherein PACK would subordinate its claims against Silver Fox[2] to Associated's credit and loan (the "Subordination Agreement").  (*Id.* ¶ 22.; Doc. No. 42-1, Ex. A "Subordination Agreement" ¶¶ 1-2.)  The Subordination Agreement was signed by representatives of PACK, Silver Fox, and Associated on October 15, 2021.  (Subordination Agreement at 1, 4-6.)  The Subordination Agreement defined PACK's subordinated claims as "all of [Silver Fox's] obligations to [PACK], now existing or hereafter arising, direct or indirect, absolute or contingent, joint or several."  (*Id.* ¶ 1.)  Any collection or enforcement of payment by PACK on this debt required Associated's prior written consent.  (*Id.* ¶ 2.)  PACK believed that Associated and Silver Fox understood that the Subordination Agreement would not apply to PACK's short-term payroll float loans.  (Fed. Compl. ¶ 23.)

Despite the additional funding from Associated, Silver Fox continued to struggle.  (*Id.* ¶ 24.)  PACK continued to provide short-term payroll float loans to Silver Fox into the beginning of 2022.  (*Id.*)  PACK and Silver Fox refinanced and consolidated their debt in March 2022, but this was still not enough to keep Silver Fox afloat.  (*Id.* ¶¶ 25-26.)  PACK and Silver Fox discussed additional funding with Associated, which agreed to

---

[2]    One of PACK's key assertions is that it only agreed to subordinate its $1 million loan to Associated's loan, and it did not subordinate any of the payroll float loans.  (Fed. Compl. ¶ 22.)  The Court instead relies on the text of the Subordination Agreement which is embraced by the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (finding that a court may consider materials embraced by the complaint in deciding a motion to dismiss).

expand its line of credit to $3 million. (*Id.* ¶ 26.) Disagreements about other amounts and loan terms followed by the parties. (*Id.* ¶¶ 27-35.) As part of these discussions, Associated requested that PACK become a limited guarantor of Silver Fox's debt and place $1 million of its funds into a deposit account at Associated. (*Id.* ¶¶ 34-35.) PACK alleges that Associated's employee James Fink orally represented to PACK that PACK's $1 million deposit would be returned to it before any additional credits and that Associated would not draw on PACK's funds. (*Id.* ¶¶ 35, 39.) PACK also alleges that Associated pressured it to convert a significant portion of its debt into equity in Silver Fox. (*Id.* ¶ 33.) The deal was finalized on May 19, 2022. (*Id.* ¶ 38.) As part of the final terms of the deal, Associated refinanced and replaced its earlier loan with a $4 million revolving line of credit and a $1.5 million term loan, PACK provided a $1 million guaranty (the "Guaranty"), and PACK converted $1 million of its existing debt into equity in Silver Fox, giving PACK a 90 percent stake in Silver Fox. (*Id.* ¶¶ 37-40.) Along with its new equity in Silver Fox, PACK took on a larger management role in Silver Fox. (*Id.* ¶¶ 40-41.)

Despite the new financing agreements, Silver Fox continued to struggle. (*Id.* ¶¶ 43-45.) Yet again, Silver Fox required additional funding. (*Id.*) Silver Fox requested additional funding from Associated in July 2022, but Associated declined the request. (*Id.* ¶ 46.) Subsequently, PACK stepped in and provided several new payroll float loans to Silver Fox in July 2022, August 2022, October 2022, November 2022, December 2022, and January 2023. (*Id.* ¶¶ 46-47, 50, 53, 59, 61-62, 65.) Throughout that period,

Silver Fox provided partial repayments to PACK on those payroll float loans.  (*Id.* ¶¶ 47, 51, 60-61, 64.)

On January 17, 2023, Associated sued Silver Fox and PACK in Hennepin County District Court (the "State Case") for the following:  (1) breach of term note against borrower; (2) breach of revolving note against borrower; (3) breach of guaranty against guarantor; (4) claim and delivery against borrower; and (5) receivership against borrower. (Doc. No. 27, Ex. A ("State Compl.") ¶¶ 15-73.)  Since then, an answer has been filed, multiple motions have been filed, a receiver has been appointed, and the parties have engaged in discovery.  (Doc. No. 27 ¶¶ 3-13.)  The receiver has also requested to expand its powers and filed claims[3] against PACK.  (*Id.* ¶ 11.)

On February 14, 2024, PACK sued Associated in Hennepin County District Court ("this case") for the following:  (1) intentional misrepresentation; (2) negligent misrepresentation; (3) declaratory judgment on the parties' subordination agreement; (4) equitable estoppel; and (5) economic duress and business compulsion.  (Fed. Compl. ¶¶ 80-117; Doc. No. 1 ¶ 1.)  On March 13, 2024, Associated removed this case to this Court, asserting that the case was properly removable under the Court's diversity jurisdiction.  (Doc. No. 1 ¶¶ 7-8.)  At that time, Associated was the only defendant in this

---

[3]      On March 28, 2024, the receiver filed a complaint against PACK for voidable transfers, unjust enrichment, breach of fiduciary duty, piercing the corporate veil, and equitable debt recharacterization.  (Complaint ¶¶ 89-158, *Lighthouse Mgmt. Grp. Inc. v. PACK Private Capital, LLC*, No. 27-CV-24-4734 (Hennepin Cnty. D. Ct. Mar. 28, 2024).) PACK does not allege that the receiver case is parallel with this case, so the Court does not address it as such below.  Moreover, the receiver case only involves the receiver on Silver Fox's behalf, PACK, and Derek Swedberg, a member of PACK.

case. On March 20, 2024, Associated moved to dismiss the original complaint. (Doc. No. 7.) PACK did not respond to this motion and instead amended its complaint on April 10, 2024. (Doc. No. 21 ("Am. Fed. Compl.").) Two days later, PACK filed a motion to remand this case to state court. (Doc. No. 23.) PACK's first amended complaint added three claims: (1) breach of duty of good faith and fair dealing; (2) violation of Minnesota Prevention of Consumer Fraud Act; and (3) civil conspiracy. (Am. Fed. Compl. ¶¶ 93-158.) It also added three defendants—Fink, Murray, and Waltz—all current or former employees of Associated. (*Id.* ¶¶ 3-5.) Associated, along with Murray and Waltz, moved to dismiss the first amended complaint, as did Fink. (Doc. Nos. 39, 50.)

## DISCUSSION

### I.    Plaintiff's Motion to Remand

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A party opposing removal may bring a motion requesting that the federal court remand the case back to state court. 28 U.S.C. § 1447(c). The district court shall remand the case to state court if it determines that the court lacks subject matter jurisdiction. *Id.*; *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 134 (2005). On a motion to remand, the party seeking removal and opposing remand bears the burden of demonstrating federal jurisdiction by a preponderance of the evidence. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010); *In re Bus.*

6

*Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). The federal court should resolve any doubt as to the propriety of removal in favor of remand. *Prempro*, 591 F.3d at 620; *Bus. Men's Assur.*, 992 F.2d at 183.

PACK argues for remand based on two grounds: (1) the Court lacks subject matter jurisdiction over its claims because there is not complete diversity between the parties; and (2) the Court should abstain under *Colorado River* abstention. The Court addresses each of these grounds below.

### A.    Subject Matter Jurisdiction

PACK argues that the Court lacks subject matter jurisdiction because PACK is a citizen of Minnesota and one of the Defendants, Fink, is also a citizen of Minnesota. (Doc. No. 25 at 8-9.) Defendants counter that PACK had no right to amend its complaint to add Fink, whose presence destroys diversity. (Doc. No. 47 at 6.)

When subject matter jurisdiction is based on diversity, as it is here, there must be complete diversity between all plaintiffs and all defendants. 28 U.S.C. §§ 1332, 1441(b). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). A limited liability company "is a citizen of each state in which its members are citizens." *Id.* at 347 n.4. Here, one of PACK's members is Derek Swedberg, who is a citizen of Minnesota. (Doc. No. 26.) Thus, PACK is a citizen of Minnesota. One of the Defendants is Fink, who is a citizen of Minnesota. Thus, Plaintiff and one of the Defendants are citizens of the same state, destroying complete diversity.

However, Fink was not a defendant to this case when PACK filed its original complaint, the complaint that Associated removed to federal court.  Associated removed this case to federal court, basing subject matter jurisdiction on diversity.  (Doc. No. 1 ¶¶ 7-22.)  After Associated's removal, PACK amended its complaint to add Fink and a couple additional bank employees.  Defendants argue that PACK did not have the right to amend the complaint at the time that it did.  (Doc. No. 47 at 6.)  Under Federal Rule of Civil Procedure 15(a)(1), a party has the right to amend its pleading once as a matter of course within 21 days of service of the pleading or within 21 days of service of a responsive pleading.  This rule does not apply when the party wishes to amend their pleading by adding a party whose presence would destroy diversity.  *Cole v. RBC Capital Markets, LLC*, No. 12-cv-1136, 2012 WL 2178997, at *1 (D. Minn. June 14, 2012).  In such cases, the party must ask for leave of court before filing an amended pleading.  *Id.*

Here, PACK's amended complaint adds Fink as a defendant, thus destroying diversity.  PACK could not make such an amendment without leave of court.  Therefore, PACK's first amended complaint must be stricken and its motion to remand is denied as moot.[4]

---

[4]    Even if PACK had properly amended its complaint, Defendants make strong arguments for otherwise denying PACK's motion to remand and dismissing claims against Fink.  The Court has some discretion over whether to permit joinder of such a party.  28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.").

Based on the original complaint, the Court has diversity jurisdiction. Associated is a national banking association, so its citizenship is based on the location of "its main office, as set forth in its articles of association." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006). Consequently, Associated is a citizen of Wisconsin. (Doc. No. 1 ¶ 13.) Associated determined that PACK is a citizen of Minnesota and does not appear to have any members that are citizens of Wisconsin. (*Id.* ¶¶ 18-22.) Thus, there is complete diversity between the parties. The amount in controversy requirement is not disputed here and is easily met. (*See id.* ¶¶ 9-10.) Accordingly, the Court has subject matter jurisdiction over this matter.

### B.    *Colorado River* Abstention

Alternatively, PACK argues that the Court should remand this case under *Colorado River* abstention. (Doc. No. 25 at 9.) Federal courts have a "'virtually unflagging obligation . . . to exercise the jurisdiction given them,' even when there is a pending state court action involving the same subject matter." *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir. 2006) (alteration in original) (citation omitted) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). However, a federal court may decline jurisdiction under *Colorado River* abstention when (1) there are parallel cases in state and federal court and (2) exceptional circumstances warrant abstention. *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009); *see also Colorado River*, 424 U.S. at 817-18. Exceptional circumstances means that "the surrender of federal jurisdiction is supported by 'the clearest of justifications.'" *Spectra Commc'ns Grp., LLC v. City of Cameron*, 806

F.3d 1113, 1121 (8th Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)). "As a threshold matter, . . . there must be pending parallel state and federal court proceedings before *Colorado River* is implicated." *Fru-Con*, 574 F.3d at 535.

Parallel cases exist when there is a "substantial similarity . . . between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Id.* "The pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient." *Window World Int'l, LLC v. O'Toole*, 21 F.4th 1029, 1033 (8th Cir. 2022) (quoting *Fru-Con*, 574 F.3d at 535). To determine similarity, a court must compare "the 'sources of law, required evidentiary showings, measures of damages, and treatment on appeal' for each claim." *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013) (quoting *Fru-Con*, 574 F.3d at 536). "When any doubt exists as to the parallel nature of concurrent state and federal proceedings, the district court cannot utilize *Colorado River* to refuse its jurisdiction." *Id.*

Here, PACK did not compare the sources of law, required evidentiary showings, measures of damages, and treatment on appeal between the State Case and this case. PACK merely alleged that the underlying facts are the same for each case and that PACK's claims could be brought as defenses in the State Case. (Doc. No. 25 at 11.) To start, the parties in the two cases are different. In the State Case, Associated is the plaintiff and Silver Fox and PACK are the defendants. (State Compl. at 1.) This case is brought by only PACK with only Associated as the defendant. (Fed. Compl. ¶ 2.) The

claims in each case also differ.  In the State Case, Associated's claims concern PACK and Silver Fox's alleged breaches of the loan agreements and the Guaranty, an award of possession of the collateral covered by the security agreement between Associated and Silver Fox, and the appointment of a receiver.  In this case, PACK's claims against Associated concern the bank employees' representations about the effect of the Guaranty, alleged pressure Associated put on PACK to convert its debt with Silver Fox into equity and sign the Guaranty, and representations made by Associated about PACK's payroll float loans to Silver Fox.

PACK's first two claims, intentional misrepresentation and negligent misrepresentation, are torts under Minnesota law that require some showing of false representations.  *M.H. v. Caritas Fam. Servs.*, 488 N.W.2d 282, 289 (Minn. 1992); *Williams v. Smith*, 820 N.W.2d 807, 814-15 (Minn. 2012).  Additionally, intentional misrepresentation requires a showing of intent to induce while negligent misrepresentation requires establishing a duty of care was owed and a failure to exercise reasonable care.  *Caritas*, 488 N.W.2d at 289; *Williams*, 820 N.W.2d at 815.  Although these two tort claims involve the similar facts, they do not touch on the contract breach issues involved in the State Case.

PACK's declaratory judgment count in this case seeks a decision about whether its payroll float loans were subordinated under the Subordination Agreement.  Associated's complaint in the State Case does not mention this Subordination Agreement.  The defaults mentioned in Associated's breach claims revolve around the failure to make payments, "maintain the applicable Fixed Charge Coverage Ratio," and a failure by

Silver Fox to maintain its primary banking relationship with Associated.  (State Compl. ¶ 11.)  While this could theoretically relate to Associated's claims to the collateral, Associated's claims do not mention the Subordination Agreement and PACK has not clarified how any decision in the State Case impacts this case.

Lastly, PACK's claims for equitable estoppel and duress are in the general realm of contracts like Associated's breach claims in the State Case, but they do not touch on the exact issues involved in the State Case.  The equitable estoppel claim only relates to the Subordination Agreement, which is not mentioned in the State Case.  The economic duress or business compulsion claim involves the alleged pressure Associated put on PACK to agree to take equity in Silver Fox and sign the Guaranty.  The State Case does involve the Guaranty, but, to the Court's knowledge, PACK did not raise these same allegations in the State Case and the claim involves breach of the Guaranty, not wrongful conduct by Associated.  At the very least, any effect is doubtful, which means the Court cannot refuse jurisdiction under *Colorado River*.

While PACK likely could have brought its claims as counterclaims—and two of its claims should have been brought as affirmative defenses—in the State Case, it chose not to do so.  The Court does not speculate about why PACK made this decision because regardless of the reasoning this choice is determinative on *Colorado River* abstention.  These claims do not exist in the State Case and the state court will not fully dispose of these claims in ruling on Associated's various breach claims.  The fact that a claim could have been brought as a counterclaim in a state case does not make the cases parallel if such a claim was not in fact asserted in the state case.  *See Micro-Surface Finishing*

12

*Prods., Inc. v. SDI, Inc.*, 97 F. Supp. 3d 1077, 1085-86 (S.D. Iowa 2015) ("[W]hat [a party] could have done is not the standard by which this Court measures whether there is a parallel state proceeding nor determines whether the state forum is adequate for protecting the federal plaintiff's rights."). If the claims had been brought as counterclaims in the State Case, the cases would be parallel. *See, e.g.*, *Rail Switching Servs., Inc. v. Pemiscot Cnty. Port Auth.*, No. 13-cv-157, 2014 WL 3400636, at *5 (E.D. Mo. July 11, 2014) (finding the cases were parallel because the claims in the federal case had been pleaded as counterclaims in the state action). Because the Court finds that the state case and the federal case are not parallel actions,[5] *Colorado River* abstention cannot

---

[5]    Even if these cases were considered parallel, there are no exceptional circumstances that warrant abstention. To determine exceptional circumstances a court considers the six *Colorado River* factors: (1) whether there is a res over which one court established jurisdiction; (2) the inconvenience of the federal forum; (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court is easily severed; (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases; (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls; and (6) the adequacy of the state forum to protect the federal plaintiff's rights. *See Fru-Con*, 574 F.3d at 534.

       PACK has not demonstrated exceptional circumstances and the clearest of justifications under these factors. There is no property involved in this case. The federal forum is just as convenient as the state forum. There is no demonstration of how this case could result in piecemeal litigation, especially given the fact that PACK chose to file these claims separately from the State Case. Additionally, there is no guarantee that the actions could be consolidated in state court. *See id.* at 539. While the Minnesota state courts are likely adequate to protect the federal plaintiff's rights and the law involved is not federal law, that does not create exceptional circumstances. These factors are neutral. Lastly, the progress in the State Case alone is not enough to create exceptional circumstances in this case.

apply, and the Court does not consider whether there are exceptional circumstances that warrant abstention.[6]

### C.    Attorneys' Fees

Both PACK and Defendants request attorneys' fees on this motion.  Because the Court has denied PACK's motion to remand, there is no basis to award it attorneys' fees. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."); *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

Section 1447(c) does not address whether a defendant may recover attorneys' fees when a plaintiff moves to remand a properly removed case.  Many courts have found that "section 1447(c) does not authorize an award of costs or fees when the initial removal was proper." *Baddie v. Berkeley Farms, Inc.*, 64 F.3d 487, 490 (9th Cir. 1995); *accord Collins v. Union Pac. R.R. Co.*, No. 11-cv-40, 2011 WL 1584864, at *1 (D. Neb. Apr. 26, 2011); *Neal v. Scapa N. Am.*, No. 09-cv-1171, 2010 WL 1882310, at *3 (D. Conn. May 11, 2010) (collecting cases); *Rubio v. McAnally Ent., L.L.C.*, 374 F. Supp. 2d 1052, 1054 (D.N.M. 2005).  Some courts have awarded fees to a removing defendant where the

---

[6]    As indicated during oral argument, the Court routinely coordinates with state courts.  For example, this is a routine practice in multi-district litigation.  The need for this kind of coordination on matters like discovery is not a reason that requires a federal court to decline jurisdiction.

"plaintiff engaged in improper and troubling conduct." *Callahan v. Wyckoff Heights Med. Ctr.*, No. 20-cv-4986, 2021 WL 7209232, at *6 (E.D.N.Y. Sept. 14, 2021) (collecting cases). Additionally, a defendant may request costs or fees under Federal Rule of Civil Procedure 11(c). *See Collins*, 2011 WL 1584864, at *1. PACK's conduct is not so egregious or "troubling" to warrant the award of attorneys' fees at this time. Additionally, Defendants have not made a Rule 11 argument and the Court declines to exercise its discretion under Rule 11 to issue sanctions. Thus, the Court denies Defendants' request for attorneys' fees.

## II.    Defendants' Motion to Dismiss[7]

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits

---

[7]    Striking PACK's first amended complaint removes Defendants Fink, Murray, and Waltz from this case. Accordingly, the Court does not further consider Fink's motion to dismiss and denies it as moot. The Court does consider Associated's joint motion with former-Defendants Murray and Waltz. The Court considers the motion to dismiss even though it addressed the first amended complaint. The complaints are essentially the same aside from the additional parties and additional counts. (Doc. No. 47 at 13; Doc. No. 42-1, Ex. D.)

attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp.*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Associated argues that PACK's claims are barred by Minnesota's credit agreement statute of frauds, Minn. Stat. § 513.33 ("the statute"). (Doc. No. 41 at 20.) PACK counters that it is not in a credit agreement with Associated, it is not a "debtor" as defined by the statute, and it is not attempting to enforce unwritten credit agreements. (Doc. No. 58 at 14-15.) The statute provides that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and debtor." Minn. Stat. § 513.33. Essentially, a plaintiff cannot maintain an action based solely upon oral promises that constitute a credit agreement under the statute. *See St. Jude Med. S.C., Inc. v. Tormey*, 779 F.3d 894, 901 (8th Cir. 2015). A credit agreement is defined broadly

as "an agreement to lend or forbear repayment of money, goods, or things in action, to

otherwise extend credit, or to make any other financial accommodation."  Minn.

Stat. § 513.33.  This includes "forbearing from exercising remedies under prior credit

agreements."  *Id.*

The term "credit agreement" encompasses more than the term contract or a typical

loan agreement.  *Figgins v. Wilcox*, 879 N.W.2d 653, 657-58 (Minn. 2016); *see also*

*Rural Am. Bank of Greenwald v. Herickhoff*, 485 N.W.2d 702, 705-06 (Minn. 1992)

(rejecting a narrow interpretation of credit agreement).  For example, "credit agreement"

has been interpreted to include agreements like guaranties and subordination agreements.

*See BankCherokee v. Insignia Dev., LLC*, 779 N.W.2d 896, 902 (Minn. Ct. App. 2010)

(guaranty); *Chies v. Highland Bank*, No. C8-00-1630, 2001 WL 214693, at *2 (Minn. Ct.

App. Mar. 6, 2001) (subordination agreement).  Here, the two agreements between

Associated and PACK that are at issue are the Guaranty and the Subordination

Agreement, two types of agreements that are considered credit agreements under the

statute.

The term debtor has also been interpreted broadly.  Under the statute, a debtor is "a

person who obtains credit or seeks a credit agreement with a creditor or who owes money

to a creditor."  Minn. Stat. § 513.33.  This term has been interpreted to include the

guarantor on a guaranty and parties to a subordination agreement.  *BankCherokee*,

779 N.W.2d at 902-03; *Chies*, 2001 WL 214693, at *2 (explaining that the term "debtor"

has a broad definition including parties to a subordination agreement).

In arguing that it is not a debtor, PACK relies on *Alliance Bank v. Dykes*, No. A12-0455, 2012 WL 6734457 (Minn. Ct. App. Dec. 31, 2012). In that case, a couple hired a construction company to build a multi-million dollar home and financed the build through two banks. *Id.* at *1. Over the course of the project, the price to complete the home increased and the construction company agreed to loan the couple some additional money, taking a third priority loan behind the two banks. *Id.* at *2. The couple eventually defaulted on their loans, so the construction company sued them for breach and foreclosure. *Id.* Later, the construction company attempted to add the two banks as defendants, asserting claims of fraudulent misrepresentation, negligent misrepresentation, negligence, and promissory estoppel partially based on statements one of the banks made calling the couple "good as gold." *Id.* at *4, 13. The Minnesota Court of Appeals found that the construction company was not a debtor under the statute "because it did not seek or obtain a credit agreement from, or owe money to, [the bank]." *Id.* at *12. Therefore, the statute did not apply to the construction company and its claims were not barred. *Id.*

Similarly, in *Thomas & Wong General Contractor v. Lake Bank, N.A.*, the Eighth Circuit found that parties to a collateral transfer agreement did not qualify as a debtor and creditor. 553 F.3d 650, 653-54 (8th Cir. 2009). The Court reasoned that while the collateral transfer agreement itself was a credit agreement under the statute, there was no extension of credit under the agreement, so the parties could not be a creditor and a debtor. *Id.* Here, PACK's claims revolve around oral promises made related to the Guaranty and the Subordination Agreement, two credit agreements. *Alliance Bank* and *Thomas & Wong* seem to show that finding a credit agreement does not require finding

that the parties involved are a debtor and a creditor.  Nevertheless, these cases are distinguishable because other cases under Minnesota law have already extended the definition of debtor to a guarantor and the parties to a subordination agreement.

Upon finding that the Guaranty and Subordination Agreement are credit agreements and PACK is a debtor under the statute, the Court now considers whether each count involves an unwritten credit agreement and should be barred by the statute. As explained above, actions on unwritten credit agreements are barred by the statute. This includes any claims alleging oral modification of a credit agreement.  *Sovis v. Bank of N.Y. Mellon*, No. 11-cv-2253, 2012 WL 733758, at *3 (D. Minn. Mar. 6, 2012).  The statute applies to any type of claim, as the Minnesota Court of Appeals has explained: "Any party asserting the existence of a 'credit agreement' must comply with the writing and signature requirements of section 513.33, *regardless of the type of claim the agreement is alleged to support*."  *BankCherokee*, 779 N.W.2d at 903 (emphasis added) (mistake and meeting of the minds); *see also Bracewell v. U.S. Bank Nat'l Ass'n*, 748 F.3d 793, 795-96 (8th Cir. 2014) (promissory estoppel and negligent misrepresentation); *Alliance Bank*, 2012 WL 6734457, at *6 (fraud and negligent misrepresentation); *Pearson v. Bank of Am. Home Loans*, No. 11-cv-2592, 2012 WL 1431386, at *3 (D. Minn. Apr. 25, 2012) (declaratory judgment).  This includes affirmative defenses. *BankCherokee*, 779 N.W.2d at 903.  PACK brings claims of intentional misrepresentation, negligent misrepresentation, declaratory judgment on the Subordination Agreement, equitable estoppel, and economic duress and business

compulsion.  The claims ask primarily for modifications of the Guaranty and the Subordination Agreement based on oral representations and unwritten understandings.

First, PACK's claims of intentional and negligent misrepresentation rely on alleged oral representations by Associated surrounding the terms of the Guaranty.  These representations would modify the Guaranty, so they are barred by the statute.  PACK's claim for declaratory judgment asks the Court to determine whether its payroll float loans were subordinated under the Subordination Agreement, again based on oral agreements and understandings between the parties.  This is another attempt to orally modify a credit agreement and is barred by the statute.

Next, PACK's equitable estoppel claim also involves Associated's alleged oral representations about the payroll float loans.  Equitable estoppel is not always barred by the statute.  *See Bracewell*, 748 F.3d at 795-96; *Brickwell Cmty. Bank v. Wycliff Assocs. II, LLC*, A10-1396, 2011 WL 1237524, at *5-6 (Minn. Ct. App. Apr. 5, 2011).  However, equitable estoppel claims are barred by the statute when they seek to enforce an alleged oral promise for modification of a credit agreement.  *Sovis*, 2012 WL 733758, at *3 n.3.  PACK's claim relies on Associated's alleged representations that it would not view the payroll float loan repayments as violating Associated's rights under the Subordination Agreement.  These representations are statements of Associated's intent not to enforce the Subordination Agreement as to certain payments.  This claim seeks to enforce an oral agreement not to subordinate certain payments under the agreement,

which would qualify as a modification of the agreement.  Therefore, this claim is barred by the statute.[8]

Lastly, PACK's claim for economic duress and business compulsion should also be dismissed.  The claim involves the alleged pressure Associated put on PACK to agree to take equity in Silver Fox and sign the Guaranty.  It argues that this pressure invalidates the Guaranty.  Neither Minnesota nor federal courts have addressed the affirmative defense of duress, and its variants, under the statute.  The Court does not decide this issue today because this count must be dismissed on other grounds, namely, the variety of duress pleaded by PACK is not recognized under Minnesota law and PACK has not alleged sufficient facts to show duress as recognized under Minnesota law.

The Minnesota Court of Appeals recently reiterated that "[a]lthough other jurisdictions have recognized 'economic duress' or 'business compulsion,' Minnesota has not."  *Hoskin v. Krsnak*, No. A23-1275, 2024 WL 2131674, at *4 (Minn. Ct. App. May 13, 2024), *review granted*, (Sept. 17, 2024) (citing *St. Louis Park Inv. Co. v. R.L. Johnson Inv. Co.*, 411 N.W.2d 288, 291 (Minn. Ct. App. 1987)).  Instead, Minnesota

---

[8]     Alternatively, this claim may be more appropriately viewed as a promissory estoppel claim which would be barred by the statute as well.  *See Bracewell*, 748 F.3d at 795-96.  Under Minnesota law, a court will look "beyond the label" of a claim and focus on the nature of what is pleaded.  *Id.* at 796 (citing *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 153 (Minn. 2001)).  To distinguish between promissory estoppel and equitable estoppel a court looks to whether the "representations upon which the plaintiff allegedly relied are more akin to statements of future intent than past or present fact."  *Id.* (quoting 28 Am. Jur. 2d *Estoppel & Waiver* § 34 (2014)).  Associated's alleged statements in this case are statements of future intent not to enforce its rights.  They are not statements relating to the facts at the formation of the agreement.  Thus, this claim is more akin to a promissory estoppel claim and would be barred for that reason as well.

courts only recognize duress as a defense to a contract if "there is coercion by means of physical force or unlawful threats, which destroys one's free will and compels compliance with the demands of the party exerting the coercion." *St. Louis Park Inv. Co.*, 411 N.W.2d at 291.  Reading beyond the label of "economic duress and business compulsion," PACK has failed to plead the necessary physical force or unlawful threats necessary to make a successful claim of duress.[9]

In conclusion, PACK's claims must be dismissed because they are barred by the statute and PACK cannot recover from the affirmative defenses pleaded.[10]  The parties disagree about whether dismissal should be with or without prejudice.  The Court dismisses this case with prejudice because its judgment does not rest on pleading failures, but instead on the merits.  *See Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1079-80 (D. Minn. 2021).

---

[9]    Further, equitable estoppel and duress are affirmative defenses under Minnesota law.  *Opheim v. County of Norman*, 784 N.W.2d 90, 99 (Minn. Ct. App. 2010); Minn. R. Civ. P. § 8.03 (labeling duress and estoppel as affirmative defenses).  Affirmative defenses like these cannot stand as independent pieces of litigation.  *ACIST Med. Sys., Inc. v. OPSENS, Inc.*, No. 11-cv-539, 2011 WL 4640884, at *2 (D. Minn. Oct. 4, 2011); *see also* Minn. R. Civ. P. § 8.03 (indicating that affirmative defenses are pleaded in response "to a preceding pleading").

[10]    Associated made several other arguments, including that PACK's fraud-based allegations did not satisfy the heightened pleading standard and PACK's declaratory judgment claim could not survive in a vacuum.  These arguments and others contained within PACK's supporting memorandum of law are moot.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff PACK Private Capital, LLC's first amended complaint (Doc. No. [21]) is **STRICKEN**.

2.  Plaintiff PACK Private Capital, LLC's motion to remand the case to state court (Doc. No. [23]) is **DENIED AS MOOT**.

3.  Defendants Associated Bank, N.A., Rodney Murray, and Michael Waltz's motion to dismiss (Doc. No. [39]) is **GRANTED**.

4.  Defendant James B. Fink's motion to dismiss (Doc. No. [50]) is **DENIED AS MOOT**.

5.  Plaintiff PACK Private Capital, LLC's claims against Associated Bank, N.A. (Doc. No. [1]) are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  November 4, 2024                 s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge