UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PACK Private Capital, LLC, | Civil No. 24-935 (DWF/ECW) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Associated Bank, N.A., James B. Fink, Rodney Murray, and Michael Waltz, | |
| Defendants. | |

## INTRODUCTION

This matter is before the Court on Defendant Associated Bank, N.A.'s ("Associated") motions for attorneys' fees. (Doc. Nos. 75, 114.) Plaintiff PACK Private Capital, LLC ("PACK") opposes the motions. (Doc. Nos. 84, 115.) For the reasons set forth below, the Court grants the motions and awards $299,942.68 in attorneys' fees on the first motion, and $240,272.10 in attorneys' fees and $1,619.64 in costs on the second motion.

## BACKGROUND

This action centered around the lending relationship between PACK, Associated, and Silver Fox Energy, LLC ("Silver Fox"), a North Dakota-based energy industry construction company. (*See* Doc. No. 73 at 1-5.) PACK provided several loans, including multiple payroll float loans, to Silver Fox. (*Id.* at 2.) Later, PACK worked with Associated to obtain more funding for Silver Fox. (*Id.* at 2-3.) As part of that deal and a subsequent refinancing, PACK executed a subordination agreement (the

"Subordination Agreement") and a $1 million guaranty (the "Guaranty"). (*Id.* at 3-4.) Relevant to the present motions, the Guaranty included the following fee-shifting provision: "[PACK] hereby . . . guarantees the full and prompt payment when due . . . of . . . all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and charges) paid or incurred by [Associated] in enforcing this Guaranty or any other applicable Loan Document against [PACK]." (Doc. No. 80-2 at 34.) "Loan Documents" is defined to include the Subordination Agreement. (*Id.* at 6.)[1]

In January 2023, Associated sued Silver Fox and PACK in Minnesota state court for various claims related to the loan agreements and the Guaranty. (*See* Doc. No. 73 at 5.) In February 2024, PACK brought this case against Associated, alleging intentional misrepresentation, negligent misrepresentation, declaratory judgment on the Subordination Agreement, equitable estoppel, and economic duress and business compulsion. (Doc. No. 1-1 ¶¶ 80-117.) In effect, the claims sought to enforce an oral agreement between PACK and Associated that certain payments would not be subordinated under the Subordination Agreement. This case was originally filed in Minnesota state court, but Associated removed it to this Court in March 2024. (Doc. No. 1.) Subsequently, Associated moved to dismiss the original complaint. (Doc. No. 7.) In response, PACK filed its first amended complaint ("FAC") and a motion to remand. (Doc. Nos. 21, 23.) Associated then moved to dismiss the FAC. (Doc. No. 39.) The

---

[1] "Loan Documents" was defined in the original loan agreement. The Guaranty incorporates that definition. (*See* Doc. No. 80-2 at 34.)

Court held a hearing on the motion to remand and second motion to dismiss on July 24, 2024. (Doc. No. 72.)

On November 4, 2024, the Court struck PACK's FAC, denied the motion to remand as moot, and granted Associated's motion to dismiss. (Doc. No. 73.) A month later, PACK filed a notice of appeal to the Eighth Circuit. (Doc. No. 89.) PACK raised three issues on appeal, namely, a new argument about written consent, an assertion that the Court improperly addressed equitable estoppel, and a challenge to the Court's decision to dismiss with prejudice. (*See* Doc. No. 107 at 3-4.) The Eighth Circuit affirmed the Court's dismissal with prejudice, explaining that PACK had waived the first argument, that the Court properly addressed the equitable estoppel claim, and that the Court did not abuse its discretion in denying leave to amend. (*Id.* at 3-5.)

Now before the Court are two motions for attorneys' fees filed by Associated: the first for work before this Court, and the second for work before the Eighth Circuit.[2]

## DISCUSSION

**I.     Entitlement to Attorneys' Fees**

"Federal courts sitting in diversity apply state law when considering a motion for attorney's fees." *Carroll Elec. Coop. Corp. v. Alltel Corp.*, 118 F.4th 934, 937 (8th Cir. 2024). This dispute is governed by Minnesota law. (*See* Doc. No. 80-2 at 37.)

---

[2]     The Eighth Circuit remanded the motion for attorneys' fees that was filed there to this Court for review under Eighth Circuit Rule 47C(b). (Doc. No. 110.) The Court subsequently ordered the parties to file copies of the motion and related documents onto the docket in this case. (Doc. No. 113.)

3

Minnesota follows the American rule on attorneys' fees, meaning that each party bears its own attorneys' fees unless there is a contractual or statutory exception. *Buckner v. Robichaud*, 992 N.W.2d 686, 689 (Minn. 2023).  Here, the Guaranty provides that PACK will pay reasonable attorneys' fees paid or incurred by Associated in enforcing the Guaranty and the Subordination Agreement, along with other Loan Documents.  The parties dispute whether Associated's defense against PACK's claims is covered by the phrase "in enforcing."

In Minnesota, "[t]he primary goal of contract interpretation is to ascertain and enforce the intent of the parties." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009).  "[W]hen a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." *Id.* at 364-65.

The Court finds that the phrase "in enforcing" unambiguously covers Associated's defense of this action.  Minnesota courts have previously relied on the *American Heritage Dictionary*'s definition of enforce, which defines it as "to compel observance of or obedience to or to impose (a kind of behavior, for example); compel." *Ecolab, Inc. v. Ford*, No. C4-94-2179, 1995 WL 238837, at *2 (Minn. Ct. App. Apr. 25, 1995) (citation modified); *accord Horodenski v. Lyndale Green Townhome Ass'n, Inc.*, 804 N.W.2d 366, 371 (Minn. Ct. App. 2011) (defining enforce in statutory attorneys' fees context).  Use of the word enforce does not require that the enforcing party be the one who brought the lawsuit or that it bring its own counterclaims.  Thus, a court should not look to a party's

4

status in the case; rather, it should look at the relief sought, or what was at the heart of the dispute.

For example, in *Ecolab*, the Minnesota Court of Appeals found that "to enforce" included a former employer's action for injunctive relief against a former employee who was attempting to violate their noncompete agreement. 1995 WL 238837, at *1-2. Relying on the *American Heritage Dictionary* definition, the court explained that use of "enforce" alone does not require the enforcing party to bring the lawsuit, nor does it require that the enforcing party wait until there is a violation to seek relief. *Id.* at *2. Instead, the court looked at the kind of relief Ecolab sought: an order compelling the employee to comply with the agreement. *Id.* That kind of relief fit squarely within the definition of enforce, whereas a request for a declaratory judgment that merely clarified obligations under an agreement would not qualify as enforcement. *Id.*

Similarly, in *Manufacturing Solutions of Minnesota, Inc. v. Abrasive Specialists, Inc.*, a Minnesota district court found that the word "enforce" included an employer's counterclaim for attorneys' fees as well as its defense against a former employee and his potential new employer's claims for declaratory relief. No. 02-CV-16-6187, 2017 WL 9803261, at *1-2 (Minn. Dist. Ct. July 26, 2017), *rev'd on other grounds*, No. A18-0388, 2018 WL 4201221 (Minn. Ct. App. Sep. 4, 2018). The court relied on three reasons. First, the word "enforce" alone does not require the former employer to bring an action. *Id.* at *3. Second, through its defense, the former employer attempted to compel observance of the confidentiality, non-solicitation, and noncompete agreement. *Id.* Third, if the former employer had not defended itself in the action, it could have been

subject to a declaratory judgment that allowed the potential new employer to employ the former employee. *Id.* Thus, as a practical matter, its defense was an attempt to enforce the restrictions contained in the agreement. *Id.*

Here, PACK brought an action against Associated for damages and declaratory relief that implicated the Guaranty and the Subordination Agreement. An award of that relief would have undermined Associated's rights under those agreements. Through its defense, Associated sought to compel PACK to observe the terms of the Guaranty and the Subordination Agreement as written. Reading the term "enforce" to include only actions brought by Associated would be exactly the kind of strained construction that Minnesota courts warn against. The parties did not include any such limiting language in the provision itself; instead, the Court must look at the definition of the word enforce. And while there may be situations where a particular defense is not an "enforcement" action, this is not one of them.[3]

---

[3] Although the Court finds that the language of the Guaranty is unambiguous, it notes its agreement with Associated's argument that a rule where the first party to the courthouse wins would be an absurd and harsh result. Such a rule would be particularly absurd in a case like this one where Associated *was* the first party to the courthouse. Associated brought the state case against PACK in 2023. Rather than assert counterclaims in that case, as it likely could have done, PACK chose to bring these claims as a separate action. It would be absurd to allow a party to escape its obligation to pay attorneys' fees—an obligation it would not have but for its own bargain—by filing a separate case.

## II. Reasonableness Determination

Upon finding that Associated is entitled to attorneys' fees under the Guaranty, the Court must determine what amount is reasonable using the lodestar method.[4] Courts start by calculating the lodestar: the number of hours reasonably expended multiplied by the reasonable hourly rate. *See, e.g.*, *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005); *Green v. BMW of N. Am., LLC*, 826 N.W.2d 530, 535 (Minn. 2013). "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). A district court has the role of determining what is reasonable and "may rely on their own experience and knowledge of prevailing market rates." *Hanig*, 415 F.3d at 825; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The burden is on the fee applicant to document the appropriate hours expended and hourly rates. *Hensley*, 461 U.S. at 433. With respect to hourly rates, a fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*,

---

[4] PACK notes that Minnesota does not technically require the lodestar method in non-statutory fee cases. (*See* Doc. No. 84 at 10 n.3.) Although the Minnesota appellate courts have not explicitly described the contractual fee test as the lodestar method, the Eighth Circuit has described it as such. *See ResCap Liquidating Tr. v. Primary Residential Mortg., Inc.*, 59 F.4th 905, 920 n.4 (8th Cir. 2023) ("Under Minnesota law, the lodestar method applies to contractual attorney's fee provisions."); *Northfield Care Ctr., Inc. v. Anderson*, 707 N.W.2d 731, 736 (Minn. Ct. App. 2006) (explaining reasonableness test in contractual setting). Despite its note, PACK does not appear to object to use of the lodestar method, so the Court employs it here.

465 U.S. 886, 895 n.11 (1984). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

The Court may adjust the lodestar based upon the time and labor required, the difficulty and nature of the case, the results, customary fees, and the ability of counsel, among other relevant factors. *In re RFC and ResCap Liquidating Tr. Action*, 399 F. Supp. 3d 827, 842 (D. Minn. 2019); *Kelbro Co. v. Vinny's on the River, LLC*, 893 N.W.2d 390, 400 (Minn. Ct. App. 2017). The most important factor in reasonableness is the magnitude of success achieved. *See Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000). Further, courts should exclude hours that were not reasonably expended—for example, hours that were excessive, redundant, or otherwise unnecessary to a degree that a lawyer in private practice would be ethically obligated to exclude them from a fee submission to a client. *Hensley*, 461 U.S. at 434.

PACK does not challenge the reasonableness of the hourly rates charged by Associated's attorneys. (Doc. No. 84 at 10; Doc. No. 115 at 19.) Instead, PACK objects to the reasonableness of the number of hours billed. (Doc. No. 84 at 10; Doc. No. 115 at 19.) The Court analyzes the reasonableness of the hours billed and the other factors for each motion separately, starting with the motion for attorneys' fees for work in this Court.

### A.   District Court Attorneys' Fees

Associated's attorneys billed 514.3 total hours, for a total of $347,639.00. (Doc. No. 77 at 6.) This includes 351.8 hours from Vedder Price P.C. ("Vedder Price"), 102.9 hours from Taft Stettinius & Hollister LLP ("Taft"), and 59.6 hours from Winthrop & Weinstine, P.A. ("Winthrop"). (*Id.* at 14.) PACK does not challenge Winthrop's hours.

Instead, it challenges the hours expended by Vedder Price and Taft, arguing that (1) the Court previously denied attorneys' fees on the motion to remand, so those fees should be excluded, (2) that Associated's attorneys overstaffed this matter, leading to excessive or redundant hours, and (3) that there was significant overlap between the first and second motion to dismiss, meaning much of the work on the second motion was excessive or redundant. (Doc. No. 84 at 11-15.)

To start, PACK is correct that the Court previously denied Associated's request for attorneys' fees for its opposition to the motion to remand. But that decision was based on the Court's interpretation of the removal statute's provision for attorneys' fees. (*See* Doc. No. 73 at 14-15.) The Guaranty's fee-shifting provision offers another basis for attorneys' fees on that work. PACK has not explained why the Court's previous decision on the statutory basis should impact its decision on the contractual basis for attorneys' fees. PACK has made no other argument for excluding the remand-related fees. The Court will not exclude those fees.

However, the Court agrees that some of the hours billed by Vedder Price and Taft are either excessive or redundant, particularly hours spent on the second motion to dismiss. There was significant overlap between the original complaint and the FAC. Indeed, Associated made this very assertion in its memorandum of law in support of the second motion to dismiss: "In fact, other than to haul in three new employee defendants whose identities were always known to Pack, Pack makes almost no substantive changes to its original defective complaint." (Doc. No. 41 at 10.) While a few additional arguments were added, substantial portions of the memorandum in support of the second

motion to dismiss were copied verbatim from the first memorandum. The Court recognizes, however, that Associated's attorneys were still required to review those paragraphs in relation to the FAC to ensure no changes were necessary.

Taking all of this into consideration, the Court finds a reduction of 15 percent is appropriate to account for excessive or redundant hours. This reduction will only be applied to hours expended by Vedder Price and Taft. The Court finds that this is a reasonable reduction and reflects consideration of the additional lodestar factors. Accordingly, the Court awards $299,942.68 in attorneys' fees ($225,513.50 to Vedder Price, $44,765.68 to Taft, $29,663.50 to Winthrop).[5]

### B. Eighth Circuit Attorneys' Fees

Associated's attorneys billed 376.4 total hours for the appeal—203.7 hours from Vedder Price and 172.7 hours from Taft—resulting in $266,969.00 in attorneys' fees. (Doc. No. 114 at 19.) PACK asserts that 276.4 of those hours were excessive or redundant because each firm's work was duplicative of that of the other. (Doc. No. 115 at 22-23.)

After a review of the record, the Court agrees that some of this work was duplicative, and therefore, excessive or redundant. However, given that some of the

---

[5] PACK also argues that there is a cap on fees under the Guaranty, and that Associated already exhausted that cap. (Doc. No. 84 at 9.) The cap PACK refers to states: "provided, further, liability of [PACK] hereunder shall be limited to a principal amount of $1,000,000.00 plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto." (Doc. No. 80-2 at 34.) This $1 million cap clearly excludes attorneys' fees and costs, so the Court rejects PACK's argument and awards the reasonable fees calculated above.

arguments on appeal had not been raised in this Court prior to the appeal, the substantial number of hours is largely justified.  The Court finds a reduction of 10 percent is appropriate to account for excessive or redundant hours.  The Court finds that this is a reasonable reduction and reflects consideration of the additional lodestar factors.  Accordingly, the Court awards $240,272.10 in attorneys' fees and $1,619.64 in costs[6] on the second motion for attorneys' fees.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1.  Defendant Associated Bank, N.A.'s motion for attorneys' fees (Doc. No. [75]) is **GRANTED**.  The Court awards $299,942.68 in attorneys' fees.

2.  Defendant Associated Bank, N.A.'s motion for attorneys' fees (Doc. No. [114]) is **GRANTED**.  The Court awards $240,272.10 in attorneys' fees and $1,619.64 in costs.

Dated:  January 12, 2026                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge

---

[6]     PACK does not object to the amount of costs.  (Doc. No. 115 at 23.)